**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____
In re                                                            :
                                                                      :
    MICHAEL Z. ROBERTS and              :       Ch. 7
    FRANCES L. ROBERTS,                      :       Case No. 09-52155
                                                                      :
        Debtors                                    :
_____:

APPEARANCES:

    Holley L. Claiborn, Esq.                         :       For the United States Trustee
    Office of the United States Trustee         :
    Giaimo Federal Building                           :
    150 Court Street, Room 302                   :
    New Haven, CT  06510                            :
                                                                              :
    Ellery E. Plotkin, Esq.                             :       For the Debtors
    Law Office of Ellery E. Plotkin, LLC         :
    777 Summer Street, 2nd Floor                 :
    Stamford, CT  06901                                :

Alan H. W. Shiff, United States Bankruptcy Judge:

**MEMORANDUM OF DECISION ON THE UNITED STATES TRUSTEE'S
MOTION TO DISMISS THE DEBTORS' CHAPTER 7 CASE**

**INTRODUCTION**

The Bankruptcy Abuse Prevention and Consumer Act was enacted in 2005 to address, *inter alia*, what its drafters perceived to be an abuse of the bankruptcy system by certain debtors.  Under amended § 707, upon the motion of a United States trustee ("UST") or others, the court *may* dismiss a case or convert it to a case under chapters 11 or 13, if the requisite abuse or bad faith is shown.

On April 1, 2010, the UST moved to dismiss this case under bankruptcy code § 707(b)(1) and (3)[1] (*see* doc. #37). The scope of that motion has been narrowed to subsection (b)(3)(B). (*See* UST's Post-Trial Memo at 10 (doc. #94)). The target of that subsection is a debtor with primarily consumer debts, who, given the totality of the circumstances, has filed a petition in abuse of the provisions of chapter 7. The debtors object, arguing that the totality of the circumstances support granting them a discharge under chapter 7 (*see* doc. #42). It is not disputed that the UST bears the burden of proving subsection (b)(3)(B). For the reasons that follow, the UST's Motion to Dismiss is denied.

## BACKGROUND

The following findings relating to the debtors' lifestyle are relevant to the "totality of the circumstances" predicate for a § 707(b)(3)(B) analysis. The debtors are a married couple with four children: a 21-year-old son, an 18-year-old son, a 16-year-old daughter, and a 13-year-old son. Mr. Roberts is an insurance salesman, and Mrs. Roberts is a homemaker.

Before moving to Connecticut in 2007, the debtors lived in Virginia. In 2005, they purchased a new home in Leesburg, Virginia for $1.1 million (the "Virginia Property"). They invested an additional $400,000 into the Virginia Property of which $200,00 was spent to correct structural problems and the other $200,000 was spent in upgrading the

---

[1] The UST also moved to dismiss the debtors' case under § 707(b)(2), but at the beginning of the trial she stated that she would not pursue relief under that code subsection. Accordingly, the scope of this decision is limited to § 707 (b)(1) and (3)(B).

new construction. To fund that cost, the debtors used a $200,000 line of credit and charged the remaining $200,000 on credit cards. They expected to repay the credit card debt from equity they hoped to realize upon the sale of the Virginia Property. Since they had previously purchased homes in which they made improvements and later sold them at profits, they believed they would be able to do the same with the Virginia Property.

When the debtors decided to move to Connecticut in 2007, where Mr. Roberts had a new job opportunity, the real estate market had begun to weaken. Therefore, they were only able to short sell the Virginia Property.[2] The original short sale deficiency was $227,000, but the debtors paid it down to $196,000. The closing of the Virginia Property occurred after the debtors moved to Connecticut.

In October 2007, the debtors purchases a home in Fairfield, Connecticut for $1.075 million (the "Connecticut Property"). They borrowed $100,000 from Mr. Roberts' mother for a down payment. They also obtained two loans with Chase, which were secured by mortgages on the Connecticut Property: one for $860,000 and the other for $107,000. In addition, they spent $150,000 from Mr. Roberts' retirement plans for home improvements

On October 26, 2009, the debtors filed for bankruptcy relief under chapter 7 ("Petition Date"). Their debts are primarily consumer debts incurred for personal, family or household purposes. *See* § 101(8). In addition to identifying their two mortgages

---

[2] A real estate short sale is a transaction in which the mortgagor, with the consent of the mortgagee, sells the real property to a third party for a price that results in the mortgagee receiving less than the amount due it, *i.e.*, a deficiency.

with Chase, the debtors scheduled a little over $603,000 of general unsecured debt of which approximately $268,500 is for credit card debt, $196,000 is the balance of the short sale deficiency on the Virginia Property, a little more than $58,500 is for student loan debt, and $80,000 is designated as a "business debt".[3]

Mr. Roberts had an adjusted gross income of $251,863 in 2007. In 2008, that amount was $203,173, in addition to the $54,051 withdrawn from pensions and annuities. In 2009, his adjusted gross income was $239,284. When the debtors moved to Connecticut, they projected Mr Roberts' annual income would be $500,000. That expectation was not realized. On their Schedule I (doc. #14 at 19 (dated Nov. 15, 2009)), the debtors reported monthly income of $18,687.06, and on their Schedule J (doc. #14 at 21 (dated Nov. 15, 2009)[4]), they reported monthly expenses of $21,748.88.

As of the Petition Date, the debtors owed federal taxes of approximately $68,000 and Connecticut taxes of approximately $15,300, which was secured by a lien on the Connecticut Property. The debtors filed an amended Schedule E to add state and federal taxes owed for the 2009 tax year, aggregating approximately $27,500.

The debtors' schedules also show that they own four automobiles: a 2002 Lexus LS 430, driven by Mr. Roberts; a 2002 Volvo S70, which the debtors' second son uses;

---

[3] At trial, Mr. Roberts testified that the $80,000 was a "signing bonus", but continued to explain that it was actually a forgivable debt that his former employer would forgive if certain performance goals were met within a specific time frame. When that did not occur because Mr. Roberts left the company, the "signing bonus" was converted to a debt obligation which Mr. Roberts was required to repay. (*See* Tr. Hrg. Tr. at 92:19-93:9.)

[4] The debtors filed a second Schedule J on August 30, 2010, which indicates the same aggregate expense amount of $21,748.88. (*See* doc. #55 at 12.)

a 2006 GMC Yukon LX, which Mrs. Roberts drives; and a 2006 Nissan 350Z, which is driven by debtors' oldest son.

There was testimony at the trial regarding the debtors' automobiles. As to the Lexus: Mr. Roberts financed the purchase of the used car on which he currently owes approximately $17,000 and makes monthly payments of $410. He estimates the car's current value is around $2,000 since it has been driven 310,000 miles. The 2006 GMC Yukon was purchased new and financed over a six-year term, with monthly payments of approximately $690. The current balance on that car loan is $18,000. With approximately 100,000 miles of use, Mr. Roberts estimates the vehicle is worth $10,000. The 2006 Nissan 350Z was purchased as a used vehicle for their oldest son. Monthly car payments are approximately $330, which are currently paid by the son. The outstanding balance on that car loan is about $15,000. It has a value of approximately $11,000. The 2002 Volvo is fully paid for and has been driven over 100,000, first by the oldest son, and then by the second son, and will be used by the daughter when she obtains a driver's license.

There was further trial testimony regarding the debtors' children. The debtors' oldest son went to college for a few years, but at the time of the trial was living at home and working part-time. No evidence was offered regarding how much he earns. Other than paying the Nissan monthly car payment, he does not make financial contributions to the household. Their next son is in private boarding school in New York, where he plays hockey for the school. The debtors have made the required tuition payments by withdrawing funds from Mr. Roberts' pension plans. This is the same source of funding the debtors use to pay for their daughter's private school tuition. The debtors testified

that they believe their children's chances of securing college scholarships will be increased by attending private high schools. In essence, then, the debtors have chosen to sacrifice the security of their future to improve that of those children. Their youngest child attends public middle school, and the debtors plan to enroll him in public high school, as well.

## DISCUSSION

The UST has limited the scope of her motion to §§ 707(b)(1) and (3)(B), the so-called "totality of the circumstances" test. The court's analysis will do the same.

In relevant part, subparagraph (1) provides that the court *may* dismiss a chapter 7 case "if it finds that the granting of relief would be an abuse of the provisions of" chapter 7. 11 U.S.C. § 707(b)(1). Subparagraph (3)(B) provides, in relevant part

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of [chapter 7] . . ., the court *shall* consider—
> . . .
> (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3)(B) (emphasis added).

> Courts considering dismissal of a Chapter 7 case under the totality of the circumstances test of § 707(b)(3)(B) have continued to employ the same pre-[2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA")] approach affirmed by the Second Circuit in *In re Kornfield*, 164 F.3d 778 (2d Cir. 1999), applying a two-part test, looking first to whether the Debtor has the *ability to pay* a substantial dollar amount or percentage of her

> unsecured debts, and then to any other relevant circumstances to determine whether there were any mitigating or aggravating factors. *See, e.g., In re Salerno*, 408 B.R. 554, 558 (Bankr. D. Conn. 2009); *In re Colgate*, 370 B.R. 50, 56 (Bankr. E.D.N.Y. 2007).

*In re Fitzgerald*, 418 B.R. 778, 782-83 (Bankr. D. Conn. 2009) (internal footnotes omitted) (emphasis added). Further, the court's "totality of circumstances inquiry is equitable in nature . . . ." *Kornfield*, 164 F.3d at 784 (cited in *Fitzgerald*, 418 B.R. at 784).

    1.    "Ability to Pay" Prong

As a preliminary matter, the court notes that the UST's argument regarding the debtors' ability to pay relies on estimates of expenses that are more generous than those proposed by the Internal Revenue Service's ("IRS") Standards tables for a family a six. *See* UST's Trial Exhibit CC. But, that generosity is gratuitous because the IRS Standards are irrelevant in this context. As other courts have observed, the IRS Standards "applicable under the means test set forth in § 707(b)(2) are not determinative in a § 707(b)(3) analysis." *In re Seeburger*, 392 B.R. 735, 742 (Bankr. N.D. Ohio 2008). The "ability to pay" prong of the totality of the circumstances test requires the court to consider the amount a debtor reasonably could be expected to pay rather than the amount calculated from the IRS Standards. *Cf. Fitzgerald*, 418 B.R. at 783, *with* § 707(b)(2)(A). "Thus, the Court looks to the Debtor's actual income and expenses to determine [his or] her ability to pay," *Fitzgerald*, 418 B.R. at 783 (citing *In re Baesa*, 398 B.R. 692, 697 (Bankr. E.D. Cal. 2008)), not to the IRS Standards tables used in calculating the means test, upon which the UST relies.

The debtors scheduled monthly income of $17,704 and monthly expenses of just under $21,750.[5] The UST argues that if the debtors adjusted their expenses to $17,004, there would be approximately $700 per month available for unsecured creditors.[6] *See* UST's Trial Exhibit CC. That suggestion is rejected.

The schedules report several categories of expenses: (1) mortgage; (2) utilities and services; (3) food, laundry, and recreation; (4) medical and dental; (5) automobile related; (6) car payments; (7) insurance (excluding auto); (8) federal and state taxes; and (9) student loans. The following table provides a comparison of the debtors' expenses, *see* Schedule J, and the UST's proposed budget, *see* UST's Trial Exhibit CC:

| Category of Expenses | Debtors' Budget | UST's Budget |
| --- | --- | --- |
| Mortgage | $ 6,651.88 | $ 5,300.00 |
| Utilities & Services | $ 1,460.00 | $ 1,100.00 |
| Food, Laundry, Recreation | $ 3,300.00 | $ 2,300.00 |
| Medical/Dental | $ 450.00 | $ 360.00 |
| Automobile Related | $ 1,425.00 | $ 1,000.00 |
| Car Payments | $ 1,429.00 | $ 1,429.00 |
| Insurance (excluding auto) | $ 1,226.00 | $ 411.00 |

---

[5] The court notes that the debtors overstated their monthly tax obligations by $1,000. *See* Schedule J, Item 12. They identify three categories of tax liabilities: "CT: $1234; Auto: $100; income: $2770 est". Those three figures total $4,104.00, not the listed $5,104.00. Therefore, the debtors' average monthly expenses total $20,748.88, not $21,748.88. Neither the UST nor the debtors identified this error.

[6] *See, supra*, note 5. Taking into account the debtors' overstatement of their monthly tax obligations, the UST's aggregate adjusted expenses should be $16,004.00.

| Federal & State Taxes | $ 4,104.00[7] | $ 4,104.00 |
|---|---|---|
| Student Loans | $ 703.00 | $ 0.00 |
| | Total: $20,748.88 | $16,004.00[8] |

The court agrees that the debtors' mortgage expense should be adjusted downward to reflect the loan modification they have received. There is no dispute that the loan modification has resulted in a monthly mortgage obligation of $5,300.

As to the utilities and services category: Without explanation, the UST proposes a reduction of the debtors' electric and fuel expenses from $600 per month to $240 per month. If the UST had explained this suggested $360 per month reduction, perhaps the court would have agreed. Mrs. Roberts, however, offered evidence that she has been able to reduce the family's monthly electric and fuel expenses by $50 to $100 through conservation. Therefore, it is reasonable to budget $500 per month for electric and fuel expenses.

In the food, laundry, and recreation category, the UST argues that the debtors should only spend $1,000 per month for food expenses versus the $2,000 per month budgeted by the debtors. Again, the UST fails to explain the basis for that calculation. It also contradicts Mr. Roberts credible testimony that $2,000 is an accurate figure reflecting the amount the household spends for food each month and that includes other, non-food items.[9] (*See* Tr. Hrg. Tr. 104:1-15). The court finds, however, that this

---

[7] *See*, *supra*, note 5.

[8] *See*, *supra*, notes 5 and 6.

[9] Two thousand dollars ($2,000) per month divided by 4.3 weeks comes to $465 per week. For a six-member family, that equals $77 per person per week.

category should be reduced by $50 per month based on Mrs. Roberts credible testimony that she has reduced dry cleaning expenses.

It appears that the only basis for the UST's $360 per month medical and dental expense allowance is her reliance on the IRS Standards tables. *See* UST's Trial Exhibit CC. Without more, the court will not reduce the debtors' claimed $450 per month budgeted expense.

In the automobile-related category, under "Transportation", the UST inexplicably suggests a $425 per month reduction (from $1,425 to $1,000). *See id.* However, based on Mr. Roberts' testimony, there is only a basis to reduce the debtors' monthly automobile-related expense by $50 per month because of a reduction in their automobile insurance costs. (*See* Tr. Hrg. Tr. at 116:16-18.)

The next category of expenses is car payments. Interestingly, the UST accepts the debtors' budgeted number of $1,429 despite Mr. Roberts' testimony that his oldest son makes the $330 monthly car payment on the Nissan. (*See* id. 117:5-16.) Given that testimony, the court finds it appropriate to reduce the debtors' scheduled car payments expense to $1,099 per month.

As for the insurance category: The UST suggests a monthly decrease in expenses of $815. That adjustment represents a $600 monthly reduction in life insurance expenses, a $104 monthly reduction in disability insurance expenses, and a $111 monthly reduction in long-term care insurance. The UST recognized that the debtors carried those insurance policies because Mr. Roberts is an insurance salesman who believes these policies are "appropriate and necessary to take care of his family." (*See id.* at 6:22-24.) The UST offered no evidence to contradict the reasonableness of

those expenses. The court, therefore, accepts the debtors' expense figure.

There was no challenge to the debtors' budgeted tax expenses. Other than noting that the debtors overstated this expense by $1,000 a month and the UST did not notice the overstatement, *see, supra*, note 5, the court accepts the corrected monthly expense figure of $4,004.

Finally, as to the student loans, the UST argues that the entire category should be eliminated "because such debt is an unsecured debt that should be paid over time in a plan." (UST's Post-Trial Memo at 10.) That argument misses the point of § 707(b)(3)(B). The purpose of that subsection is to prevent debtors from using a chapter 7 discharge to avoid paying creditors when they have an ability to do so. Therefore, the question is whether the student loan expense budgeted by the debtors is a reasonable component in assessing their ability to pay creditors. The UST does not offer any argument that it is not. Moreover, the dischargeability of student loan debts is addressed under § 523(a)(8). The denial of the UST's motion will not permit the debtors to discharge the student loan debts unless they are able to prove that payment of that debt would be an undue hardship. But, even if the court were to accept the UST's argument that the debtors' budgeted student loan obligation should not be included, it would still find that the debtors do not have the ability to pay a dividend to their unsecured creditors.

Based on the evidence, the court adjusts the previous table as follows:

| Category of Expenses | Debtors' Budget | UST's Budget | Court's Findings |
|---|---|---|---|
| Mortgage | $ 6,651.88 | $ 5,300.00 | $ 5,300.00 |
| Utilities & Services | $ 1,460.00 | $ 1,100.00 | $ 1,360.00 |
| Food, Laundry, Recreation | $ 3,300.00 | $ 2,300.00 | $ 3,250.00 |
| Medical/Dental | $ 450.00 | $ 360.00 | $ 450.00 |
| Automobile Related | $ 1,425.00 | $ 1,000.00 | $ 1,395.00 |
| Car Payments | $ 1,429.00 | $ 1,429.00 | $ 1,099.00 |
| Insurance (excluding auto) | $ 1,226.00 | $ 411.00 | $ 1,226.00 |
| Student Loans | $ 703.00 | $ 0.00 | $ 703.00 |
| Federal & State Taxes | $ 4,104.00[10] | $ 4,104.00[11] | $ 4,104.00 |
| Total: | $20,748.88 | $16,004.00 | $18,887.00 |

Having compared the debtors' actual income of $17,703.44 with what it finds to be their actual expenses, *i.e.*, 18,887, the court concludes that they do not have the ability to pay a substantial dollar amount or percentage of their unsecured debts.

2.     "Other Relevant Circumstances" Prong

In addition to considering a debtor's ability to pay, courts consider other relevant circumstances as mitigating or aggravating factors in determining whether a § 707(b)(3)(B) dismissal is warranted. Those factors include whether:

---

[10]  *See, supra*, note 5.

[11]  *See, supra*, notes 5 and 6.

(1)  the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)  the debtor incurred cash advances and made consumer purchases far in excess of an ability to repay;

(3)  the debtor's proposed family budget is excessive or unreasonable;

(4)  the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5)  the petition was filed in good faith.

See Fitzgerald, 418B.R. at 784-85 (quoting In re Marcoux, 301 B.R. 381, 386 (Bankr. D. Conn. 2003)); see also In re Colgate, 370 B.R. 50, 55-56 (Bankr. E.D.N.Y. 2007) (listing additional factors for consideration). Clearly, those issues cannot "be reduced to the mechanical application of mathematical formulae . . . ." Id. at 784. Parenthetically, the above factors have been generally addressed, above, in the discussion of the "ability to pay" prong of the totality of circumstances test.

Moreover, the debtors' testimony about the weakened real estate housing market in Virginia and their need to accept a short sale on the Virginia Property was a significant factor that precipitated their filing for bankruptcy relief. (See, e.g., Tr. Hrg. Tr. at 52:22-53:12.)  Further, the debtors incurred the bulk of their credit card debt to make improvements on their Virginia Property before the recession hit the economy and when the real estate market was still strong.  As previously noted, given their prior experiences with improving properties and selling them at a profit, it was reasonable for them to incur such debt with the expectation that they would be able to pay it off when they sold the property.  Therefore, the court is persuaded that the consumer debt

incurred by the debtors was not "far in excess of [their] ability to repay " when that debt was incurred.  See *Fitzgerald*, 418 B.R. at 784.

## CONCLUSION

As noted, the purpose of § 707(b)(3)(B) is to prevent a debtor who has been shown by the UST or other movant to have abused the bankruptcy system from receiving the benefits of chapter 7 relief.  The UST has failed to make such a showing.  Notably missing was any evidence of an extravagant lifestyle or any expense of funds that would otherwise be available to creditors with allowed claims.  To the contrary, there was evidence that the debtors are willing to sacrifice their future security for that of their children's.

Accordingly, for the foregoing reasons,

IT IS ORDERED that the UST's Motion to Dismiss the debtors' case pursuant to § 707(b)(1) and (3) is denied.

Dated this 25th day of May, 2011 at Bridgeport, Connecticut.

BY THE COURT

Alan H. S. Shiff
United States Bankruptcy Judge